**MEYERSDALE FUEL CO. v. UNITED STATES.**

No. J-261.

Court of Claims.
Nov. 3, 1930.

**444**

R. Lester Moore, of Washington, D. C. (J. S. Y. Ivins, of Washington, D. C., and John T. Duff, Jr., of Pittsburgh, Pa., on the brief), for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (Charles F. Kincheloe, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WILLIAMS, and GREEN, Judges.

LITTLETON, Judge.

Plaintiff brings this suit to recover $76,551.06 alleged to represent the balance of an overpayment of income and profits tax due it for 1920 resulting from the filing of a consolidated return for that year for itself and three other corporations known as the Franklin Gas Coal Company, the Smokeless Quemahoning Coal Company, and the Randolph Coal Company. The consolidated return was filed in plaintiff's name, and the total tax shown thereon upon the consolidated net income of all of the corporations amounting to $109,639.03 was paid in four installments to the collector of internal revenue by plaintiff with its checks. Before plaintiff paid these amounts, however, it charged the other three corporations whose income was included in said return with their proportionate part of the total tax in accordance with their net income, and they each paid to the plaintiff the amounts so charged on the dates set forth in the findings. The amount of the total tax paid by plaintiff representing its proportion of the tax due upon the consolidated net income shown in the return, and for which it

was not reimbursed by the other corporations, was $14,439.47.

After the consolidated return had been filed the collector of internal revenue, according to his usual custom, entered the total tax shown on the return on an assessment list of March, 1921, in the name of plaintiff whose name only appeared at the head of the consolidated return. In due course the list was duly signed by the Commissioner of Internal Revenue. Subsequently the Commissioner audited the return and ruled that the corporations were not affiliated within the meaning of section 240 of the Revenue Act of 1918 (40 Stat. 1081) and computed the tax of plaintiff and the other corporations separately upon their individual incomes. The correct tax liability of plaintiff was determined to be $13,600.80 and there is no dispute in this proceeding about that.

The Commissioner first made additional assessments against the other corporations in June, 1926, in respect of their tax for 1920, and, according to instructions the collector satisfied the tax so determined and assessed against these three corporations by applying thereto a proportion of the tax shown and paid on the consolidated return. A certificate of overassessment was first issued for $96,038.23, being the difference between the plaintiff's correct tax liability and the total tax shown on the consolidated return. A small proportion of this tax paid on the consolidated return was also credited against additional assessments against the Randolph Coal Company for 1921 and the plaintiff for 1922. After making these credits and subtracting the correct tax of plaintiff of $13,600.80 from the remainder of the total tax paid on the consolidated return, there was left the amount of $4,119.16 paid on such return. The last-mentioned amount was refunded to plaintiff with interest by Treasury check dated September 30, 1927. The plaintiff's counsel protested this action of the Commissioner claiming that, in the absence of an agreement among the corporations involved, the credits were illegal, and demanded that the difference between the total tax of $109,639.03 paid on the consolidated return and the plaintiff's correct tax liability of $13,600.80 computed on a separate basis, or $96,038.23, be refunded to the plaintiff with interest as an overpayment by it for 1920.

The Commissioner might well have denied this protest of plaintiff of illegality, because in our opinion the plaintiff, under the facts, was not entitled to a refund of more than

$838.65, being the difference between the tax of $14,439.47 paid by it on the consolidated return out of its own funds without reimbursement from the other corporations and its correct tax liability of $13,600.80. The other corporations might have had some cause to make objections as to amounts, but we need not consider this matter here. After the filing of plaintiff's protest of illegality and request for reconsideration, the Income Tax Unit of the Bureau of Internal Revenue concluded that, under the decision of the United States Board of Tax Appeals in Mather Paper Co., 3 B. T. A. 1, the separate tax liability of the corporations included in the erroneous consolidated return, with the exception of a certain amount against the Franklin Company, should be satisfied on the collector's books out of the total tax paid on the consolidated return without further assessment, and submitted a memorandum to that effect to the Accounts and Collections Unit of the Bureau of Internal Revenue. As a result the Commissioner of Internal Revenue in a letter of April 10, 1928, to plaintiff's counsel, set out in finding 12, advised that the previous credits should be reversed, and that the total tax paid on the consolidated return should be allocated to the tax due by the corporations which had been included in the consolidated return in proportion to the net income assignable to each in conformity with the decision of the Board of Tax Appeals in Mather Paper Co., supra. On April 14, 1928, the Deputy Commissioner of Accounts and Collections instructed the collector of internal revenue that the previous certificate of overassessment of $96,038.32 and the additional assessments in June, 1926, were erroneous and to reverse the credits previously made and withhold further action by the bureau under the decision of the Board of Tax Appeals in Mather Paper Company, supra. The collector did so. Subsequently, in May and June, 1928, certificates of overassessment were issued as set forth in findings 15, 16, and 17. Thereupon the collector of internal revenue made appropriate entries in his records showing the payment and satisfaction without further assessment of the tax liability of the several companies, with the exception of a deficiency of $5,439.35 against the Franklin Company finally determined by the Commissioner, out of the tax of $109,639.03 originally collected on the consolidated return which had previously been assessed in its entirety against the plaintiff as the parent corporation. By this action the plaintiff was given a further refund of $5,316.01 with interest.

Upon these facts we are of opinion that plaintiff is not entitled to recover. It has no just cause to complain concerning that which the Commissioner did, and we need not enter into a discussion whether the other companies might have had any valid objection. They are not parties to this suit. The Commissioner followed the decision of the Board of Tax Appeals in Mather Paper Co., supra, and we find no reason for holding that the decision of the board in that case was wrong.

Plaintiff's contention, as summarized in its reply brief, is as follows: "The plaintiff does not assume that a certificate of overassessment in itself justifies a refund, but in this case the plaintiff was assessed and paid $109,-639.03 for 1920. It is admitted by the defendant that the plaintiff's correct tax liability for 1920 is $13,600.80. The Meyersdale Fuel Company therefore was overassessed and overpaid for 1920 in the amount of $96,-038.23. The Commissioner of Internal Revenue has already made refunds of $4,119.16 and $5,368.01.

"The plaintiff is still entitled to a further refund of $86,551.06 with legal interest. There is no question but that the Meyersdale Fuel Company paid to the Commissioner of Internal Revenue during 1921 by its own checks and from its own funds $109,639.03 for the assessment made for the year 1920. The fundamental error of the defendant is in assuming that the Commissioner of Internal Revenue can take money paid to him by one corporation and apply it in payment of the taxes of other corporations. The commissioner's so-called reallocation in June, 1928, is nothing more than an assessment against each of the four individual companies made at that time, and taxes paid by the plaintiff in 1921 cannot be applied as a credit to offset such assessments made against the Franklin, Smokeless, and Randolph companies."

Plaintiff also contends in support of its claim for judgment that the Commissioner made assessments against the Franklin, Smokeless, and Randolph Companies in May and June, 1928, which he was not permitted to do under the statute of limitation and waiver, and that, therefore, the application of a portion of the total tax paid on the consolidated return in satisfaction of such assessments was barred and was illegal. Assuming this claim were true, which we think is not the case, it would not benefit this plaintiff. Plaintiff's claim is predicated upon a technicality and a too literal interpretation of the provisions of section 284(a) of the Revenue Act of 1926 (26 USCA § 1065(a)

with reference to overpayments, refunds, and credits. There was no agreement among the corporations that plaintiff would assume the tax of the other corporations or that their tax should be assessed against plaintiff. However, the facts establish that there was an agreement among the several corporations that the tax shown on the consolidated return of the corporations included in such consolidated return was to be paid through the plaintiff as the parent corporation. Each subsidiary corporation paid to plaintiff its proportion of the tax. In substance, so far as concerns the total tax paid on the consolidated return in question, with the exception of $14,439.47, the plaintiff was not "the taxpayer" within the meaning of the statute. It merely acted as the medium through which the other corporations paid the amounts which they believed to be due upon their net income. This is clearly established by the charges which plaintiff made on its books against the other corporations of their proportion of the tax before it made payments to the collector, and the payment by such other corporations to the plaintiff in each instance, except one payment made by the Franklin Gas Coal Company on March 28, of the amounts so charged before the plaintiff's checks reached the collector of internal revenue. Even if all of the tax shown on the consolidated return had been remitted by the plaintiff to the collector before it received the actual cash from the other corporations in reimbursement, this was done for the convenience of all, and plaintiff would have been in the position of having advanced money to the other corporations to the extent of their liability. The provisions of section 252 of the Revenue Act of 1918 (40 Stat. 1085) and section 284(a) of the Revenue Act of 1926 (26 USCA § 1065(a) must be construed and applied in the light of the situations arising in connection with the filing of consolidated returns under the provisions of section 240 of the Revenue Act of 1918 (40 Stat. 1081). When the facts in this case are viewed in the light of these provisions, it is clear that plaintiff is not entitled to recover. The Commissioner had already refunded to plaintiff amounts in excess of its tax which it paid out of its own funds as a "taxpayer," and, even if the Commissioner had retained money belonging to the other corporations on assessments against such corporations, this plaintiff is not entitled to recover these amounts. Taxes may be and often are collected without assessment, and this is recognized by sections 273 of the Revenue Acts of 1924 and 1926 (26 USCA § 1047), but, in such a case, the tax, if legally due, cannot be recovered merely because it had not been formally assessed. The Commissioner did not make a new assessment in May or June, 1928, against the Franklin, Smokeless, and Randolph Companies. So far as these corporations were concerned, the tax due by them had been collected without assessment specifically against them. The action of the Commissioner as disclosed by his letter of April 10, 1928, in applying the amount shown, assessed, and paid in the name of plaintiff on the consolidated return in excess of plaintiff's tax liability in satisfaction of the tax of the other three corporations computed on a separate basis and the issuance of certificates of overassessments, was not a new or further assessment, but was a reversal of a former credit which he had made and the making of a new distribution of the total tax paid, to the tax liability of the other companies out of moneys paid by them as their tax through the plaintiff.

This last distribution made by the collector in conformity with the Commissioner's instructions only slightly changed the amounts which had theretofore been allocated to the several companies. No assessment list was signed by the Commissioner. The entry by the collector of the names of the Franklin, Smokeless, and Randolph Companies upon certain pages of his records, designated as Treasury Department form 23A, upon which pages opposite the name of the companies he made certain entries and notations under the headings "Old Balance," "Date," "Debit," "Credit," "New Balance," "Remarks," did not constitute an assessment by the Commissioner, even though such pages were headed "Assessment list." These pages are uniformly used by the collector to show a proper record of the accounts of taxpayers. When the Commissioner makes an assessment, he signs an entirely different document headed "Commissioner's assessment list" designated Treasury Department form 23 C—1. There appears upon such list statements nowhere contained in the list used by the collector upon which to make his entries.

The plaintiff is not entitled to recover. The petition must therefore be dismissed, and it is so ordered.

WHALEY, Judge, did not hear this case, and took no part in the decision thereof.