MACATEE, Inc.

v.

UNITED STATES.

No. 14840.

United States Court of Appeals,
Fifth Circuit.

June 30, 1954.

Harry I. Freedman, Dallas, Tex., for appellant.

Dudley J. Godfrey, Jr., Ellis N. Slack, Alonzo W. Watson, Jr., Special Assts. to the Atty. Gen., H. Brian Holland, Asst. Atty. Gen., John C. Ford, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

Macatee, Inc. filed this action against the United States of America pursuant to the provisions of 28 U.S.C.A. § 2410 to foreclose a lien on real property on which the United States also claimed a lien. The lien of Macatee, Inc. was a statutory attachment lien obtained by the issuance of a writ of attachment and levy thereof on September 15, 1952, followed by re-

turn of the officers pursuant to Article 6662 of the Revised Civil Statutes of Texas. On April 24, 1953, Macatee, Inc. obtained judgment in the attachment suit against A. W. Lagow in the sum of $6,505.49.

The United States asserted claims against A. W. Lagow for employment and social security taxes (Federal Insurance Contribution Act, see 26 U.S.C.A. § 1400 et seq.) The pertinent facts concerning those claims may be most readily grasped from the following schedule:

| Amount | For period ending | Date of receipt by Collector of certified assessment lists | Date Collector gave notice of assessment and made demand for payment on taxpayer | Date of filing notice of tax lien with County Clerk |
|---|---|---|---|---|
| $ 2,420.63 | 3rd Qtr. of 1951 | May 19, 1952 | May 15, 1952 | Sept. 23, 1952 |
| $ 127.43 | 4th Qtr. of 1951 | May 19, 1952 | May 15, 1952 | Sept. 23, 1952 |
| $19,516.57 | 2nd Qtr. of 1951 | Aug. 5, 1952 | July 31, 1952 | Jan. 9, 1953 |
| $20,463.61 | 3rd Qtr. of 1951 | Aug. 5, 1952 | July 31, 1952 | Jan. 9, 1953 |

The district court found that the liens for taxes of the United States on the property of Lagow were superior to Macatee's attachment lien and ordered the property sold pursuant to 28 U.S.C.A. §§ 2001, 2002, and the proceeds of sale to be paid into the registry of the court and distributed, first to the payment of court costs, second to the payment of the claims of the United States, third to the payment of the judgment to Macatee, Inc., and lastly the balance, if any, to A. W. Lagow.

Appellant's first contention is that, since its attachment lien was levied upon specific property of Lagow and notice of the writ and return filed with the County Clerk of Dallas County before the United States filed its notices of tax liens with the County Clerk, the attachment lien is superior to the liens of the United States. In considering this contention, we must assume that appellant's attachment lien created by Texas law was a choate lien under the laws of that State and was a specific and perfected lien under federal law. United States v. Liverpool & London & Globe Ins. Co., 5th Cir., 209 F.2d 684.[1] The relative priority of the liens here involved is then to be determined by applying the test of "the first in time is the first in right." United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367; United States v. Liverpool & London & Globe Ins. Co., supra; United States v. Albert Holman Lumber Co., 5 Cir., 206 F.2d 685, rehearing denied 208 F.2d 113. Application of that test to the undisputed facts of this case establishes that the tax liens of the United States were first in time and, therefore, prior in right. The assessment lists as to the taxes due the United States were received by the Collector on May 19, 1952 and August 5, 1952. Thereupon, under the provisions of Section 3671 of the Internal Revenue Code[2] liens arose in favor of the United

1. It may be noted that the United States Supreme Court, on May 24, 1954, granted certiorari to review this decision and also in two similar cases, United States v. Acri, 6 Cir., 209 F.2d 258, and United States v. Scovil, 224 S.C. 233, 78 S.E.2d 277; See 347 U.S. 973, 974, 74 S.Ct. 784, 785.

2. 26 U.S.C.A. § 3671. "Period of lien
"Unless another date is specifically fixed by law, the lien shall arise at the time

States and, under the provisions of Section 3670, such liens extended to "all property and rights to property, whether real or personal, belonging to such person." Macatee's lien could have arisen no earlier than September 15, 1952, the date its suit was filed and the writ of attachment was issued. Accordingly, the liens for federal taxes arose before Macatee's attachment lien.

It is true that notices of the tax liens were filed by the Collector with the County Clerk on September 23, 1952 and January 9, 1953, after the writ of attachment had been levied. The filing of such notices, however, was necessary to protect only against the persons named in the statute, 26 U.S.C.A. § 3672, that is "as against any mortgagee, pledgee, purchaser, or judgment creditor". See United States v. Security Trusts & Savings Bank, 340 U.S. 47, 53, 71 S.Ct. 111, 95 L.Ed. 53 (concurring opinion of Mr. Justice Jackson); United States v. City of New Britain, Conn., 347 U.S. 81, 88, 74 S.Ct. 367. The notices of tax liens were filed with the County Clerk prior to the time Macatee reduced its claim against the taxpayer to judgment.

■ Appellant's second contention is that the only demands for payment by the Collector were made *prior* to the receipt of the assessment lists and were insufficient because, according to appellant's contention, the lien for unpaid taxes upon the property of a delinquent tax-

payer does not arise in favor of the United States until the Collector makes demand for payment *after* he receives the assessment list.[3] The cases cited by the appellant sustain the proposition that a demand for payment of unpaid taxes is a condition precedent to the enforcement of a lien in favor of the United States upon the property of a delinquent taxpayer. It is true, also, that 26 U.S.C.A. § 3655 requires the Collector to notify the taxpayer *after* he has received the list of taxes from the Commissioner. The purpose of requiring such a notice and demand is for the protection of the taxpayer. In re Baltimore Pearl Hominy Co., 4 Cir., 5 F.2d 553, 555. It has little or no relation to determining priority of liens between the United States and other lienholders. If a demand after receipt of the assessment list by the Collector is essential, the demand would relate back to the date of such receipt and the lien would take priority from that date. See 26 U.S.C.A. § 3671, quoted in footnote 2, supra. Cf. Citizens National Trust & Savings Bank of Los Angeles v. United States, 9 Cir., 135 F.2d 527.

Appellant insists that, under Section 3670 of the Internal Revenue Code, 26 U.S.C.A. § 3670,[4] the lien does not arise until the taxpayer has neglected or refused to pay the tax after demand. That section does not, however, require that the demand be made after the receipt of the assessment list. It requires only that the taxpayer be "liable" to pay the

the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

3. In support of this contention the appellant cites the following authorities: Detroit Bank v. United States, 317 U.S. 329, 335, 63 S.Ct. 297, 87 L.Ed. 304; United States v. Ettelson, 7 Cir., 159 F.2d 193; Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 114 F.2d 380; MacKenzie v. United States, 9 Cir., 109 F.2d 540; In re Baltimore Pearl Hominy Co., 4 Cir., 5 F.2d 553; The River Queen, D.C.E.Dist.Va., 8 F.2d 426; In re Holdsworth, D.C.N.J., 113 F.Supp. 878; United States v. Rosenfeld, D.C.E.

Dist.Mich., 26 F.Supp. 433; United States v. Allen, C.C.Middle Dist.Tenn., 14 F. 263; United States v. Pacific Railroad, C.C.E.Dist.Mo., 1 F. 97; and provisions of Chapters 34, 35 and 36 of Title 26, Internal Revenue Code.

4. "Section 3670. *Property subject to lien*
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

taxes and that he "neglects or refuses to pay the same after demand".

■■ Appellant's argument seems to be based on the old theory of ad valorem taxation, that there must be a formal act of assessment before liability for a tax arises, 51 Am.Jur., Taxation, Section 647, Footnote 11. That does not generally hold true as to excise taxes, id. Section 649, Footnote 16. Chief Judge Hutcheson of this Court, when a district judge, wrote as follows concerning income taxes:

"As to the first question, while it is true that as to ad valorem taxes there must be a formal act of assessment by the officers, or board of officers, elected or appointed for that purpose, which must be made a matter of record before liability for a tax arises (26 R.C.L. § 297), liability for income taxes arises, and in some sense it may be said that they accrue, at the time the gains, profits, and income passed into the hands of the recipient. The return is required in any case before the day of the levy, so that it is clear that the tax is due—that is, that the recipient of the gains, profits, and income is liable for it—before it is assessed, as the return is only to ascertain if the liability exists, and its extent. 26 R.C.L. § 127." United States v. Proctor, D.C.So.Dist.Texas, 286 F. 272, 273–274.

The Court of Claims has noted more than once that "Taxes may be and often are collected without assessment". Meyersdale Fuel Co. v. United States, 44 F.2d 437, 446, 70 Ct.Cl. 765; Muir v. United States, 3 F.Supp. 619, 621, 78 Ct.Cl. 150; Pioneer Coal & Coke Co. v. United States, 14 F.Supp. 661, 669, 83 Ct.Cl. 200. It has been observed that "The federal income tax system is based upon a theory of self-assessment. It is a basic principle of that system that a taxpayer is under a duty to correctly report his taxable income and to pay the proper amount of taxes due thereon." Welp v. United States, D.C.N.D.Iowa, 103 F.Supp. 551, 560. That observation holds true as to the employment and social security taxes here involved and the taxpayer became liable for them prior to assessment and prior to the times the demands for payment were made on May 15, 1952 and July 31, 1952. See Sections 1400, 1420, 1600, 1604, and 1605 of the Internal Revenue Code and Regulations 120, Sections 406.605 and 406.606. We conclude, therefore, that insofar as the determination of priorities of liens between the United States and the appellant is concerned, it was not essential that the Collector make demand for payment *after* he received the assessment lists.

■ If there is cause for complaint for failure to give the notice required by 26 U.S.C.A. § 3655, that cause belongs to the taxpayer. See In re Baltimore Pearl Hominy Co., supra. We think that it was probably an inadvertence for the district court to decree foreclosure of the liens on the taxpayer's property in a proceeding to which the taxpayer was not a party. It may be that the liens far exceeded the value of the property, but the concluding sentence of the judgment directed the payment of any remaining balance of the proceeds of sale on foreclosure to the taxpayer. In any event, the fact that the taxes have now been assessed may not be conclusive that they are owing, and, before a decree of foreclosure, the taxpayer is entitled to his day in court. United States v. Acri, D.C., 109 F.Supp. 943, 944, affirmed 6 Cir., 209 F.2d 258, certiorari granted 1954, 347 U.S. 973, 74 S.Ct. 784. See 33 Am.Jur., Liens, Section 47. 26 U.S.C.A. § 3678(b)[5] seems to us to make the taxpayer an indispensable party to a civil action to enforce a lien on his

---

5. 26 U.S.C.A. § 3678(b):
   "(b) *Parties to proceedings.* All persons having liens upon or claiming any interest in the property or rights to property sought to be subjected as aforesaid shall be made parties to such proceedings and be brought into court."

property. While the taxpayer's absence is not complained of by either of the parties to this appeal, we think it of such importance that it should be noted by this Court.

The judgment insofar as it determines priorities of liens between the parties is affirmed, but insofar as the judgment orders the property of the taxpayer sold for the satisfaction of the liens the judgment is reversed and the cause remanded for such further proceedings, if any, as are consistent with this opinion. The costs are taxed against the appellant.

Affirmed in part and reversed in part and remanded.